UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT WATKINS, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 3:17-cv-2715-BRM-DEA |
| | : | |
| BAI BRANDS, LLC, BEN WEISS, and | : | |
| DR PEPPER SNAPPLE GROUP, INC., | : | |
| | : | OPINION |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendants Bai Brands, LLC ("Bai") and Dr Pepper Snapple Group, Inc.'s ("Dr Pepper") Motion to Dismiss (ECF No. 12); and (2) Defendant Ben Weiss's ("Weiss") Motion to Dismiss (ECF No. 22). Plaintiff Robert Watkins ("Watkins") opposes the motions. (ECF Nos. 18, 30.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Bai and Dr Pepper's Motion is **GRANTED** and Weiss's Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Factual Background

For the purposes of the motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

The central dispute is whether Watkins was the owner of certain "membership units" in Bai at the time of the Bai-Dr Pepper merger. In 2009, Weiss founded Bai, a limited liability company that initially produced soft drinks called "Botanical Antioxidant Infusions" made with the coffee berry. (Am. Compl. (ECF No. 3) ¶¶ 10-11.) Initially, Weiss distributed his product from a storage facility in Princeton, New Jersey using a single van. (*Id.* ¶ 12.) Weiss had no experience in the manufacturing or distribution of soft drinks. (*Id.* ¶ 13.) Therefore, in the spring of 2010, Weiss hired Watkins as Bai's Vice President of Direct Sales Distribution. (*Id.* ¶ 14.) "In order to induce Watkins to join Bai, Weiss offered Watkins an equity interest in Bai." (*Id.* ¶ 15.)

In March 2010, Watkins and Weiss, on behalf of Bai, entered into an employment agreement (the "Employment Agreement") pursuant to which Watkins was hired as Bai's Vice President of Direct Sales Distribution, at a salary of $70,000 per year, and upon completion of one year of employment Watkins would receive 11,625 membership interest units in Bai, representing .5% of Bai's equity. (*Id.* ¶ 17.) While the Employment Agreement was reached orally, it was later memorialized in writing signed by Weiss, "on behalf of Bai," and Watkins in the spring of 2010. (*Id.* ¶ 18.) Watkins alleges Bai and Weiss retained the only copy of the Employment Agreement. (*Id.*)

In early 2011, in recognition of Watkins's numerous achievements with Bai, Bai awarded him a bonus in the form of 1,250 membership interest units (the "2011 Units"), certificated as of January 3, 2011. (*Id.* ¶ 31.) "The 2011 Units were restricted, and permitted [Bai] to repurchase them upon termination of Watkins [sic] employment." (*Id.* ¶ 32.)

In April 2011, after Watkins completed one year of employment with Bai, he communicated with Weiss and his assistant, Susan Nyzio, about formally documenting the 11,625 membership units he was promised under the Employment Agreement. (*Id.* ¶ 35.) The formal

documentation of the membership units required the completion of paperwork. Nyzio confirmed she had received all documents from Watkins, and said, "I will make sure [Weiss] sees them on Thursday so he can get the certificate out." (*Id.* ¶ 36.) Two weeks passed and Watkins did not hear from or receive the certificate. On April 25, 2011, Watkins emailed Weiss asking, "Will I be getting a certificate for my shares? [Nyzio] has all paperwork for a while." (*Id.* ¶ 37.) In the subsequent exchange, Weiss stated, "[Nyzio] gave me your signed docs today. I will send your certificate out tomorrow. Sorry for the delay." (*Id.*) Despite his statement that he would send Watkins a certificate representing the 11,625 membership units, Watkins never received one. (*Id.* ¶ 38.) Watkins's employment with Bai ended sometime in August 2011, and Bai never exercised its right to repurchase Watkins's 2011 units. (*Id.* ¶ 33.)

On November 21, 2016, Dr Pepper and Bai entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Dr Pepper was to acquire Bai for a purchase price of approximately $1.7 billion. (*Id.* ¶ 39.) Pursuant to the Merger Agreement, Bai was required to issue a Letter of Transmittal in "customary form" and send it to all members of Bai to instruct them on how to exchange their units for the applicable merger consideration. (*Id.* ¶ 40.) Watkins never received a copy of the Letter of Transmittal. (*Id.* ¶ 44.) However, Dr Pepper, as a public company, was also required to file a copy of the Merger Agreement with the SEC.[1] (*Id.* ¶ 41.) Because the execution of the Merger Agreement was publicized, Watkins obtained a copy of it through the SEC's website and contacted Weiss to inquire about his interest in Bai and receipt of his merger consideration for his 12,875 units. (*Id.* ¶¶ 41-42.) Weiss told him he "should shred the certificates" he had in Bai because they were "worthless." (*Id.* ¶ 43.)

---

[1] While not defined in the Complaint, the Court presumes Watkins is referring to the U.S. Securities and Exchange Commission.

On January 30, 2017, the Merger Agreement closed. (*Id.* ¶ 46.) Because the Merger Agreement closed, all outstanding restricted Bai membership units were automatically converted into unrestricted Bai membership units. (*Id.* ¶ 47.) In addition, all Bai membership units were cancelled in consideration of the right to receive from Dr Pepper a per unit amount of the merger consideration (the "Per Unit Closing Consideration"). (*Id.* ¶ 48.) The Per Unit Closing Consideration was $108. (*Id.* ¶ 50.) As such, Watkins believes he is entitled to $1,390,500. (*Id.* ¶ 51.)

In February 2017, prior to learning of the closing, Watkins (through counsel) wrote to Bai inquiring as to the status of his membership units and asked whether or not his interest was documented in the company's books. (*Id.* ¶ 52.) In response, Bai asserted there was no contract between Bai and Watkins, and that Watkins had no interest in Bai. (*Id.* ¶ 53.)

**B. Procedural History**

On April 20, 2017, Watkins filed a Complaint against Bai, Weiss and Dr Pepper. (Compl. (ECF No. 1).) On April 21, 2017, he filed an Amended Complaint against all Defendants alleging five counts: (1) declaratory judgment against Bai and Dr Pepper; (2) breach of contract against Bai; (3) breach of fiduciary duty against Weiss; (4) tortious interference against Weiss; and (5) breach of contract/third party beneficiary against Dr Pepper. (ECF No. 3.) On July 7, 2017, Bai and Dr Pepper filed a Motion to Dismiss Count One of Watkins's Amended Complaint, the declaratory judgment claim. (ECF No. 12.) On July 24, 2017, Weiss filed a Motion to Dismiss all claims against him. (ECF No. 22.) Watkins opposes both motions. (ECF Nos. 18, 30.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

## III. DECISION

### A. Declaratory Judgment Claim Against Bai and Dr Pepper

Bai and Dr Pepper argue Watkins's declaratory judgment claim must be dismissed because it "merely duplicates his breach-of-contract claims (Second and Fifth Claims for Relief)" and "seeks to remedy conduct that occurred *entirely* in the past." (ECF No. 12-1 at 7.) Watkins argues the Court should defer its decision on Bai and Dr Pepper's Motion to Dismiss because "they do not challenge the sufficiency" of Count Two or Five (breach of contract claims against Dr Pepper and Bai). Watkins further argues "even if [the declaratory judgment Count] were dismissed now, both Bai and Dr Pepper will continue to be in the case." (ECF No. 18 at 13, 16.) Additionally, Watkins argues his declaratory judgment claim is not duplicative of his breach of contract claim

against Bai because his breach of contract claim "does not require any showing that Watkins was an owner of Bai units at the time of the [m]erger." (*Id.* at 15.)

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (internal citations omitted). In exercising that discretion, a district court must act "in accordance with the purposes of the Declaratory Judgement Act and the principles of sound judicial administration." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (citation omitted).

Ordinarily, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct[,] . . . [n]or is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006); *accord Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993). "There must be a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment. The fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987).

In addition, courts have routinely dismissed declaratory judgment claims that are merely redundant of a plaintiff's other claims. *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 379 (D.N.J. 2015); *see Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 504 (D.N.J. 2009) (dismissing declaratory judgment claim where the declaration plaintiffs sought

7

would be duplicative of a favorable finding on their consumer fraud act claims); *Hammond v. Doan*, 316 A.2d 68, 70 (N.J. Super. Ct. App. Div. 1974) ("While . . . a declaratory judgment action is not precluded by the existence of an alternative form of relief, there is ordinarily no reason to involve its provisions where another adequate remedy is available.").

Here, Watkins's Employment Agreement with Bai has been terminated since August 2011. In addition, his declaratory judgment claim—that as of the time of the closing of the merger of Bai and Dr Pepper, Watkins was legal owner 12,875 membership units in Bai—seeks to remedy conduct that occurred in the past, namely, whether Watkins became entitled to membership units under his alleged Employment Agreement with Bai and/or was granted the 2011 membership units. Because all Bai membership units were cancelled in consideration of the right to receive from Dr Pepper a per unit amount of the merger consideration, there is not ongoing relationship between Bai and Watkins or Dr Pepper and Watkins. (ECF No. 3 ¶ 48.) "As such, the parties do not have an ongoing relationship and declaratory relief will not affect the Defendants' present behavior." *Glob. Fresh Produce, Inc. v. Epicure Trading, Inc.*, No. 11-01270, 2012 WL 924326, at *4 (D.N.J. Mar. 16, 2012). Moreover, the declaration Watkins seeks is redundant of his breach of contract claims against Bai and Dr Pepper and can be remedied by such relief. *See Mladenov*, 124 F. Supp. 3d at 379; *see Maniscalco*, 627 F. Supp. 2d at 504; *Hammond*, 316 A.2d at 70. Accordingly, Bai and Dr Pepper's Motion to Dismiss Count One of Watkins Amended Complaint is **GRANTED**.

### B. Breach of Fiduciary Duty Claim against Weiss

Weiss argues Watkins's claim for breach of fiduciary duty fails because the alleged breach arises out of Watkins's Employment Agreement with Bai and Dr Pepper. (ECF No. 22-1 at 5-8.) Watkins contends Weiss's breach of his fiduciary duties do not arise out of the Employment Agreement, but out of his fiduciary duties as the one who controls the affairs and conduct of Bai and as a majority stockholder. (ECF No. 10-11.)

Pursuant to New Jersey law, a "breach of a fiduciary obligation is a tort claim, and thus requires the showing of a duty, a breach, an injury, and causation." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 311 (D.N.J. 2013) (quoting *In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1457 (D.N.J. 1987)). However, a tort remedy cannot "arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (2002). Those "who control the affairs and conduct of a corporation, whether public or private, have a fiduciary duty to all the stockholders and the powers they have by virtue of their majority status are powers held by them in trust." *In re Metrologic Instruments, Inc. Shareholders Litig.*, No. A-2472-13, 2017 WL 541104, at *11 (N.J. Super. Ct. App. Div. Feb. 10, 2017) (quoting *Dermody v. Sticco*, 465 A.2d 948, 950 (N.J. Super. Ct. Ch. Div. 1983)).

The Court finds Watkins has plead facts to sustain a breach of fiduciary duty claim. Watkins's Amended Complaint asserts:

> 60. Weiss, as the majority owner and controlling member-manager of Bai, owed broad fiduciary duties of loyalty, good faith and care to Bai's minority owners, including to [Watkins] as the recipient of the 2010 Units and 2011 Units.
> 61. Weiss breached the fiduciary duties that he owed to Watkins by causing Bai not to recognize [Watkins's] ownership interest, and by failing to disclose [Watkins's] ownership interest to Dr Pepper.

> 62. As a result of Weiss's breach of fiduciary duties, [Watkins] has been damaged in an amount to be determined at trial, but in no event less than $1,390,500.

(ECF No. 3 ¶¶ 60-62.) The Amended Complaint clearly articulates Watkins was awarded a bonus in the form of 1,250 membership interest units, certificated as of January 3, 2011. (ECF No. 3 ¶ 31.) As such, Weiss, as an alleged majority owner and controlling member-manager, owes Watkins, an alleged minority owner, a fiduciary duty. The Amended Complaint further pleads Weiss breached that duty by causing Bai not to recognize his ownership interest and failing to disclose the ownership interest to Dr Pepper, which caused him damage in the amount of $1,390,500.

Weiss's argument that "minority stockholders are not liable for a breach of fiduciary duty to a minority stockholder who is an employee of the corporation under an employment contract with respect to issues involving that employment," is misplaced. (ECF No. 34 at 2-3 (quoting *In re U.S. Eagle Corp.*, 484 B.R. 640, 653 (Bankr. D.N.J. 2012).) First, *In re U.S. Eagle Corp.* is governed by Delaware law. Weiss fails to point to any New Jersey case standing for the same proposition. Nevertheless, Watkins's breach of fiduciary claim does not concern issues involving Watkins's employment with Bai. In fact, at the time of the closing of the merger, Watkins employment relationship and Employment Agreement was terminated, and Watkins was merely a minority stockholder in the company. Watkins instead alleges that after the termination of his employment, and during the merger of Bai and Dr Pepper, Weiss owed him a fiduciary duty to notify Dr Pepper of his ownership interest. As such, Weiss's Motion to Dismiss Count Three is **DENIED**.

### C. Watkins's Tortious Interference Claim against Weiss

Weiss argues Watkins's claim for tortious interference fails because an employee or agent acting on behalf of an employer cannot be liable under tortious interference, unless it is acting outside the scope of his employment. (ECF No. 22-1 at 8.) Watkins responds by arguing he has alleged "Weiss interfered with Watkins's existing relationship to Bai (as a member) by canceling Watkins's vested ownership interest without justification" and that "Weiss's conduct interfered with Watkins's reasonable expectation that he would become a creditor of Dr Pepper as a third party beneficiary of the Dr Pepper/Bai Merger Agreement." (*Id.*) Moreover, Watkins argues:

> To the extent that New Jersey law insulates an employee or agent of a breaching entity from tort liability for causing the breach, so long as his conduct is "within the scope of employment," that rule plainly has no application to the second of Watkins's theories of interference – i.e., that Weiss interfered with Watkins's reasonable expectation of becoming Dr. Pepper's creditor under the Merger Agreement – because at the time of the interference Weiss was not an employee or agent of Dr. Pepper.

(ECF No. 30 at 13.)

Under New Jersey law, to establish a claim of tortious interference claim, a plaintiff must prove: (1) an existing contractual relationship; (2) the defendant intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) damages resulting from the interference. *Angrisani v. Capital Access Network, Inc.*, 175 F. App'x 554, 557 (3d Cir. 2006) (applying the above tortious interference factors to the plaintiff's claim that the defendant "tortuously interfered with his employment relationship"); *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.*, 870 F. Supp. 1237, 1247 (D.N.J. 1994); *see Printing Mart–Morristown v. Sharp Electronics Corp.*, 563 A.2d 31, 37 (N.J. 1989). An employer, employee, or one of its agents cannot interfere with its own employment contract. *See Pitak v. Bell Atl. Network Servs., Inc.*, 928

F. Supp. 1354, 1369 (D.N.J. 1996); *McDermott v. Chilton Co.*, 938 F. Supp. 240, 247 (D.N.J. 1995); *Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J. Super. 523, 529 (App. Div. 1984).

The Court finds Watkins has not plead facts to sustain a claim for tortious interference. He fails to allege facts demonstrating Weiss's alleged interference was undertaken with malice. He merely alleges Weiss "cancelled" or "concealed" his membership from Bai without stating Weiss's intention for doing so. (ECF No. 3 ¶ 66.) Recognizing his Amended Complaint fails to plead intent, Watkins's opposition states, "Weiss as the sole manager and controlling owner of Bai, took intentional and unjustified action to increase his own percentage ownership in Bai by unilaterally canceling Watkins's ownership interest." (ECF No. 30 at 14.) This contention is unsupported by allegations in the Amended Complaint. Indeed, Watkins cites nothing in his Amended Complaint supporting Weiss's interference was done intentionally or with malice. Because Watkins must plead all four elements to establish tortious interference, and fails to at least plead malice, Weiss's Motion to Dismiss Count Four is **GRANTED without prejudice**. The Court need not discuss the other elements.

### D. Weiss's Statute of Limitations Argument as to the 2011 Units

Weiss argues Watkins's breach of fiduciary duty and tortious interference claims are barred by the statute of limitations because Watkins did not commence this lawsuit until April 2017, more than six years after January 2011, when Watkins was "supposed" to receive his 2011 Units. (ECF No. 22-1 at 9.) Watkins argues "Weiss has simply misread the Complaint." (ECF No. 30 at 15.) Specifically, he argues

> [t]here is no claim in this case that Bai breached the Employment Agreement by failing to award the bonus units in January 2011, or that Weiss interfered with that award in January 2011. To the contrary, the Complaint quite clearly alleges that Bai, in its discretion, did grant 1,250 units (referred to as the "2011 Units" in the Complaint) in recognition of Watkins's achievements. *Indeed, a*

12

> *certificate for those bonus units was delivered to Watkins, which he still has*.

(*Id.*)

The Court agrees with Watkins's response. The Amended Complaint unambiguously states Bai awarded Watkins the 2011 Units, "which were certificated as of January 3, 2011." (*Id.* ¶ 31.) There is no claim that Bai breached the Employment Agreement or any agreement by failing to award the 2011 Units, those units were awarded. Instead, Watkins alleges Weiss breached his fiduciary duty by failing to disclose to Dr Pepper his 2011 Units and that Weiss tortuously interfered with his rights as owner of the 2011 Units to receive consideration during the merger and closing. The merger closed on January 30, 2017, therefore, the six-year statute of limitations has not expired. *See Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 226 n.13 (3d Cir. 2001). (stating a breach of fiduciary duty claim brought under New Jersey law is subject to a six-year limitations period); *Devine v. LyondellBasell Indus., N.V.*, 2016 WL 5934705, at *3 (D.N.J. Oct. 12, 2016) (stating the statute of limitations in New Jersey for tortious interference is six years). Accordingly, Weiss's Motion to Dismiss pursuant to the statute of limitations is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Bai and Dr Pepper's Motion to Dismiss is **GRANTED without prejudice**. Weiss's Motion to Dismiss Watkins's tortious interference claim (Count Four) is **GRANTED**, but **DENIED** as to Watkins's breach of fiduciary duty claim (Count Three).

Date: February 20, 2018          */s/ Brian R. Martinotti*_____
                                 **HON. BRIAN R. MARTINOTTI**
                                 **UNITED STATES DISTRICT JUDGE**